## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————— )
MICHAEL ANDRE JONES, *et al.*, )
 )
Plaintiffs,[1] )
 )
v. )     Civil Action No. 11-0935 (ABJ)
 )
ISAAC FULWOOD, JR., *et al.*, )
 )
Defendants. )
———————————————————————— )

### MEMORANDUM OPINION

This matter is before the Court on the defendants' motion to dismiss. For the reasons

discussed below, the motion will be granted.

## I. BACKGROUND

Theodore Wrenn ("plaintiff") was convicted in the Superior Court of the District of

Columbia on one count of first degree child sexual abuse. Mem. of P. & A. in Supp. of Defs.'

Mot. to Dismiss ("Defs.' Mem."), Ex. J (Judgment and Commitment/Probation Order, *United

States v. Wrenn*, No. F5502-98 (D.C. Super. Ct. Feb. 25, 1999)). Plaintiff describes the

underlying offense as follows:

> 48.    That on or about March 1998, Plaintiff entered his sister's
> house in a drunkard state and high on drugs. He noticed his twelve
> year old daughter lying on the floor, sleeping.
>
> 49.    Plaintiff had begun rubbing on his daughter's hands and
> legs when his niece entered the room.
>
> 50.    Plaintiff was lain [sic] prostrate on top of his daughter.

———————————————————

[1]     The complaint has been dismissed voluntarily as to plaintiff Michael Andre Jones,
leaving Theodore Wrenn as the sole plaintiff.

51.     Plaintiff's niece threatened calling the police under the fear factor of when she too had been sexually abused by her father.

52.     Plaintiff ran from the house, immediately, and went to his brother's house.

53.     July 29, 1998, marshals arrested Plaintiff and he was charged with First Degree Sexual Abuse of a minor . . . .

Compl. at 23-24 (page numbers designated by the Court).[2]   In February of 1999, the Superior Court imposed a five to 15 year term of imprisonment.  Defs.' Mem., Ex. J.

By the time of the plaintiff's initial parole hearing on June 5, 2003, *see* Defs.' Mem., Ex. K (D.C. Adult Initial Hearing Summary dated June 5, 2003) at 1, the District of Columbia Board of Parole ("Board") had been abolished, and the United States Parole Commission ("USPC") had assumed jurisdiction to make parole decisions for District of Columbia Code offenders, *see* D.C. Code § 24-131.  The hearing examiner deemed the plaintiff "an extremely dangerous individual in as much as he had the capacity to have sexual intercourse with his own 11 year old daughter on three separate occasions prior to the instant offense."  *Id.*, Ex. K at 2.  He applied the parole guidelines promulgated by the USPC ("2000 Guidelines") and recommended an upward departure from the guidelines.  *Id.*  The USPC concurred:

After consideration of all factors and information presented, a decision above the Total Guideline Range is warranted because you are a more serious risk than indicated by your Base Point Score.  You admitted during the hearing that you had sexually abused your daughter on 3 occasions prior to the instant offense. During the hearing, you attempted to mitigate your commission of the offense.  During your incarceration, you have not participated in any programs related to your offense that would make you less of a risk to the community if released.  In addition, you abused a position of trust to commit this offense.  Abuse of a position of trust was not considered in the computation of the base point score.

---

[2]     Page numbers of the Complaint are based on the order in which they were presented to the Court and designated by the Court's electronic filing system.

> These factors make you a more serious risk to the community if
> released on parole at this time.

*Id.*, Ex. L (Notice of Action dated July 1, 2003) at 1.  The USPC denied parole and continued the matter to June 2006, when time the plaintiff would have served more than 7 years of his sentence, and 36 months beyond the initial hearing date.  *Id.*  The record does not reflect what took place at that hearing, if it occurred. [3]

A reconsideration hearing was held on August 15, 2007.  Defs.' Mem., Ex. M (Hearing Summary) at 1.  Again applying the USPC's 2000 Guidelines, the hearing examiner recommended that parole be denied and the matter continued until the plaintiff served another 36 months' incarceration.  *Id.* at 2-3.  This was an upward departure from the strict application of the 2000 Guidelines with which the USPC concurred:

> After consideration of all factors and information presented, a
> decision above the Current Total Guideline Range is warranted
> because you are a more serious risk than indicated by the
> guidelines in that during the hearing you minimized your
> commission of the offense.  During your incarceration, you have
> no participated in any program related to [y]our offense that would
> make you . . . less of a risk to the community if released.
> Furthermore, you abused a position of trust when you committed
> this offense.

*Id.*, Ex. N (Notice of Action dated September 19, 2007) at 1.

On reconsideration in 2009, the USPC applied the parole regulations promulgated by the Board ("1987 Regulations").  *See generally* Defs.' Mem., Ex. O (Hearing Summary dated November 17, 2009).  Although the plaintiff's score would have supported the grant of parole, the hearing examiner recommended an upward departure from the 1987 Regulations, *id.* at 3, based in part on the plaintiff's apparent lack of "insight regarding his actions, thoughts,

---

[3]     The plaintiff represents that a reconsideration hearing took place in June 2006, that parole was denied, and that the USPC continued the matter for three years.  *See* Compl. ¶ 55.  The record does not include exhibits related to this hearing.

behaviors and consequences of his actions." *Id.* at 2. At that time, the hearing examiner believed that, "based on his past behavior and lack of [sex offender] treatment," the plaintiff "pose[d] a threat to the community in terms of his likelihood to reoffend . . . ." *Id.* The USPC denied parole and continued the matter for another 12 months. *Id.*, Ex. P (Notice of Action dated February 23, 2010) at 1. By that point, plaintiff had served approximately 11 years of the 5 to 15 year sentence.

The plaintiff's most recent parole rehearing occurred on October 5, 2010. *See* Defs.' Mem., Ex. Q (Hearing Summary dated October 5, 2010) at 1. The hearing examiner noted the plaintiff's participation in a sex offender treatment program, *see id.* at 3, but also observed that the plaintiff's "victim was . . . extremely vulnerable . . . as she was 12 years of age, and mentally retarded." *id.* at 4. Even though the plaintiff was eligible for parole release under the 1987 Regulations, the hearing examiner recommended an upward departure because he deemed the plaintiff "a more serious risk than indicated by the guidelines." *Id.* The USPC denied parole and continued the matter to October 2012, by which time the plaintiff will have served 24 more months since his last hearing. *Id.*, Ex. S (Notice of Action dated February 10, 2011) at 1. It reasoned:

> [The guidelines indicate that parole should be granted, but the [USPC] is departing from the guidelines because [it] finds that you remain at risk of reoffending based on the nature of your offense and your criminal history. Moreover, you are a more serious parole risk than indicated by your base point score because your victim, your 12-year old daughter who is mentally retarded, was an extremely vulnerable victim. It is recommended that you continue to participate in and successfully complete the sex offender treatment program at FMC Devens. Your continued participation in sex offender treatment is required to minimize your risk to the community to a level that does not compromise public safety if you are granted parole in the future. It is also recommended that the [Federal Bureau of Prisons] forward an updated mental health

> evaluation and sex offender treatment progress report to the
> [USPC] prior to your next hearing.

*Id.*, Ex. T (Notice of Action dated July 21, 2011).[4]

According to the plaintiff, notwithstanding his eligibility for release on parole, the USPC, its Chairman and Commissioners in their official and individual capacities, *see* Compl. at 4, have refused to "provide[] a 'presumptive' release date based on their suitability criteria," in violation of rights protected under the United States Constitution, among other provisions, *id.* at 6. Count I asserts "unconstitutional parole procedures [which] significantly increase plaintiff['s] sentence," resulting in a violation of his right to due process. *Id.* at 29. Count II alleges that the defendants' "failure to provide fair warning notice" of their decisions to depart from both the 1987 Regulations and the 2000 Guidelines violates of the ex post facto clause. *Id.* Count III alleges that the defendants erroneously deferred parole release "without providing presumptive release dates" in violation of his right to due process and equal protection. *Id.* The plaintiff demands a declaratory judgment, a reduction in his sentence, and punitive damages of $500,000 "for malicious and willful conduct violating the <u>Sellman</u> standard" to which the defendants must adhere.[5] *Id.* at 6. Specifically, the plaintiff contends that the defendants' application of the

---

[4]     The July 21, 2011 Notice of Action modified the reasons for the decision to deny parole set forth in the February 21, 2011 Notice of Action.

[5]     The Court presumes that the plaintiff is referring to *Sellman v. Reilly*, 551 F. Supp. 2d 66 (D.D.C. 2008), and alleges "that [the] USPC retroactively applied its own parole guidelines and practices so as to significantly increase the risk that [he] would serve [a] longer term [ ] of incarceration," *id.* at 68.

         The USPC since has adopted a new regulation pursuant to which it applies the 1987 Regulations if the prisoner, as does the plaintiff, meets the following qualifications:

> (i)    The prisoner committed the offense of conviction after March 3, 1985 and before August 5, 1998;
> (ii)   The prisoner is not incarcerated as a parole violator;
> (iii)  The prisoner received his initial hearing after August 4, 1998; and
> (iv)   The prisoner does not have a parole effective date, or a presumptive parole date before January 1, 2010.

USPC's 2000 Guidelines instead of the Board's 1987 Regulations led to the denial of parole in 2003, 2006, 2007, 2009, and 2011, *see id.* at 13, 24-27, and to the "service of a substantial additional period of time" in prison, *id.* at 27.   Had the 1987 Regulations been applied, the plaintiff asserts, he would have been released on parole "immediately after service of his minimum sentence." *Id.* at 26 (emphasis removed).

## II. DISCUSSION

### A. The Plaintiff May Proceed Under § 1983

A prisoner must seek habeas relief if he seeks "to invalidate the duration of [his] confinement[ ] either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Wilkinson v. Dotson,* 544 U.S. 74, 81 (2005) (emphasis in original); *see Chatman–Bey v. Thornburgh,* 864 F.2d 804, 810 n.5 (D.C. Cir. 1988) (A "prisoner's challenge to the determination of his eligibility for parole . . . attack[s] the 'fact or duration' of confinement" and "therefore, habeas is the sole remedy available to such a prisoner.").   A claim under § 1983 "remains available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner." *Wilkinson,* 544 U.S. at 81.   Here, the plaintiff's success on his challenge under § 1983 would not necessarily result in his immediate or speedier release from custody, and therefore, the Court finds that he need not bring his claims in a petition for a writ of habeas corpus in the district of his confinement. *See Wilson v. Fulwood*, 772 F. Supp. 2d 246, 259 (D.D.C. 2011).

---

28 C.F.R. § 2.80(o)(2) (effective Nov. 13, 2009).

*B.  The Plaintiff's Claims Against the USPC and its Commissioners Will Be Dismissed*

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction"). Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the defendants move to dismiss the claims against the USPC and its Commissioners in their official capacities for lack of subject matter jurisdiction. *See* Defs.' Mem. at 19-21. Insofar as the plaintiff sues the Commissioners in their individual capacities, the defendants move to dismiss on the ground that they are immune from suit. *See id.* at 22-24.

1.  Sovereign Immunity

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Such consent may not be implied, but must be "unequivocally expressed." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992). "Sovereign immunity is jurisdictional in nature." *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994). Therefore, "[a]bsent a waiver, sovereign immunity shields the Federal Government . . . from suit." *Id.*; *see United States v. Sherwood*, 312 U.S. 584, 586 (1941).

The plaintiff brings this action under 42 U.S.C. § 1983, arguing that "Section 1983 is an appropriate legal vehicle to attack unconstitutional parole procedures," Compl. at 31, particularly because the USPC "act[s] under color of state law," *id.*, in rendering parole decisions for District of Columbia offenders.  The USPC is a federal entity.  *See, e.g., Epps v. Howes,* No. 06-717, 2007 WL 2248072, at *3 (D.D.C. July 31, 2007); *see also Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). Notwithstanding its role in parole matters for District of

Columbia Code offenders, it "retains the immunity it is due as an arm of the federal sovereign." *Settles*, 429 F.3d at 1106. The United States has not waived this immunity, *see id.* at 1105-06, and the plaintiff's claims against the USPC are therefore barred. *Mowatt v. U.S. Parole Comm'n*, 815 F. Supp. 2d 199, 205 (D.D.C. 2011); *Bolden-Bey v. U.S. Parole Comm'n*, 731 F. Supp. 2d 11, 14 (D.D.C. 2010) (dismissing § 1983 claim against the USPC for lack of subject matter jurisdiction); *see Hunter v. Reilly*, 693 F. Supp. 2d 53, 59 (D.D.C. 2010) (denying leave to amend complaint to add claim for damages on the ground that "sovereign immunity bars a claim for money damages against the USPC, and against its commissioners in their official capacities because of the USPC's status as a federal government entity."), *aff'd*, 405 F. App'x 514 (D.C. Cir. 2011) (per curiam).

The USPC's immunity extends to its Commissioners, all of whom the plaintiff sues in part in their official capacities. A suit against a government official in his official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent," and "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citations omitted). It follows that any claims for damages against government officials in their official capacities are barred by the doctrine of sovereign immunity unless either the government specifically waives the immunity, or the government agents' actions fall within an exception to the immunity doctrine. *See Clark v. Library of Cong.*, 750 F.2d 89, 103-04 (D.C. Cir. 1984) (holding that the doctrine of sovereign immunity barred a claim for money damages against the Librarian of Congress in his official capacity because immunity had not been waived and the exceptions to immunity did not apply). Here, the plaintiff raises constitutional claims against the USPC Commissioners, and the United States "has not waived sovereign immunity with respect

to actions for damages based on violations of constitutional rights by federal officials when brought against the United States directly, or against officers sued in their official capacities." *Hamrick v. Brusseau*, 80 F. App'x 116, 116 (D.C. Cir. 2003) (per curiam) (internal citations omitted). The plaintiff's claims against the USPC Commissioners in their official capacities are also barred under the doctrine of sovereign immunity. *Ali v. U.S. Parole Comm'n*, No. 06-0235, 2007 WL 902312, at *2 (D.D.C. Mar. 23, 2007).

2. Quasi-Judicial Immunity

The USPC Commissioners are amenable to suit in their individual capacities under § 1983 and, by extension, under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *See Fletcher v. District of Columbia,* 370 F.3d 1223, 1227 (D.C. Cir. 2004), *vacated in part on other grounds,* 391 F.3d 250 (D.C. Cir. 2004); *see Settles,* 429 F.3d at 1104 (reaffirming the holding in *Fletcher* that "a cause of action under § 1983 will lie against the individual members of the [USPC] when acting pursuant to the Revitalization Act § 11231"). However, the Commissioners are absolutely immune from a lawsuit such as this which is "predicated on acts taken in their 'quasi-judicial' or 'quasi-legislative' capacity." *Taylor v. Reilly,* No. 09-0749, 2010 WL 891276, at *2 (D.D.C. Mar. 9, 2010); *see Fletcher v. U.S. Parole Comm'n*, 550 F. Supp. 2d 30, 43 (D.D.C. 2008) (reaffirming grant to USPC Commissioners of absolute quasi-judicial immunity from suit). Therefore, the plaintiff's claim for money damages against the USPC Commissioners in their individual capacities "is barred because the defendants, as federal agents performing a quasi-judicial function in making a parole determination in [the plaintiff's] specific case, are protected by absolute quasi-judicial immunity from such a suit." *Anderson v. Reilly,* 691 F. Supp. 2d 89, 92 (D.D.C. 2010); *Nelson v. Williams*,

750 F. Supp. 2d 46, 52 (D.D.C. 2010), *aff'd*, No. 10-5249, 2011 WL 2618078 (D.C. Cir. June 23, 2011), *cert. denied*, 132 S. Ct. 1035 (2012).

C.  *The Plaintiff Fails to State an Ex Post Facto Claim*

"In order to state an ex post facto claim, plaintiff would have to allege that the parole authority is applying later-adopted laws that disadvantage him instead of the laws that were in effect at the time he committed the offenses." *Austin v. Reilly*, 606 F. Supp. 2d 4, 9 (D.D.C. 2009) (citing *Weaver v. Graham*, 450 U.S. 24, 30 (1981)).  In the parole context, a "retroactively applied parole . . . regulation or guideline violates the Ex Post Facto Clause if it 'creates a significant risk of prolonging [the plaintiff's] incarceration.'"  *Fletcher v. Reilly*, 433 F.3d 867, 877 (D.C. Cir. 2006) (quoting *Garner v. Jones,* 529 U.S. 244, 251 (2000)).

Generally, under the indeterminate sentencing scheme in effect at all times relevant to the Complaint, the Superior Court sentenced an offender "for a maximum period not exceeding the maximum fixed by law, and for a minimum period not exceeding one-third of the maximum sentence imposed, and any person so convicted and sentenced <u>may be released on parole . . . at any time after having served the minimum sentence</u>."  D.C. Code § 24-403(a) (emphasis added). The plaintiff was sentenced to an indeterminate prison term of five to 15 years, and his parole eligibility thus was "established by the sentencing court."  *Cosgrove v. Thornburgh*, 703 F. Supp. 995, 997 (D.D.C. 1988).  Parole may be granted when it appears that "there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be."  D.C. Code § 24-404(a).   In 1987, the Board promulgated regulations, *see* 28 D.C.M.R. § 204 (1987), which adopted "criteria consist[ing] of pre[-] and post-incarceration factors which enable[d] the Board

to exercise its discretion when, and only when, release is not incompatible with the safety of the community."  28 D.C.M.R. § 204.1.  If the Board's decision fell "outside the numerically determined guideline," the decision must have been "explained by reference to specific aggravating or mitigating factors" set forth in Appendices 2-1 and 2-2.  *Id.*  § 204.1.

The Board could, "in unusual circumstances, waive the [Salient Factor Score] and the pre[-] and post-incarceration factors . . . to grant or deny parole to a parole candidate."[6]   28 D.C.M.R. § 204.22.   For example, a prisoner may have appeared to be a higher risk to the community if his current offense involved ongoing criminal behavior, if he had an "[u]nusually extensive and serious prior record," or if he demonstrated "[u]nusual cruelty to victims."   28 D.C.M.R. § 204, app. 2-1.  In these circumstances, the Board could depart upward and deny parole to a prisoner even if he otherwise would have been eligible for parole release under a strict application of the 1987 Regulations.  *See* 28 D.C.M.R. § 204.22.  Conversely, a prisoner could have been deemed a better risk than application of the 1987 Regulations would suggest, and the Board could make a downward departure if, for example, his criminal record "result[ed] exclusively from trivial offenses" or who experienced a "substantial crime-free period for which credit [had] not already been given on the Salient Factor Score."  28 D.C.M.R. § 204, app. 2-1.  In either circumstance, the Board would have been required to "specify in writing those factors" on which it relied "to depart from the strict application" of the 1987 Regulations.  28 D.C.M.R. § 204.22.

It is true that the USPC applied its 2000 Guidelines, instead of the operative 1987 Regulations, at plaintiff's initial parole hearing in 2003 and on rehearing in 2007.  However, the

---

[6]     The Salient Factor Score ("SFS") is "an actuarial parole prognosis aid to assess the degree of risk posed by a parolee."  28 D.C.M.R. § 204.3.  It is "one of the factors used in calculating parole eligibility" pursuant to the 1987 Regulations.  *Id.* § 204.2.

record reveals that the USPC then shifted course and applied the 1987 Regulations at each subsequent rehearing. And, it appears to the Court that the plaintiff did not remain in custody past his minimum sentence because the USPC applied the incorrect set of parole guidelines. Rather, he is in custody because the USPC expressly departed from the 1987 Regulations based on its determination that the plaintiff is a more serious parole risk than would be indicated by his point score alone, particularly given the repeated nature of the conduct, and the victim's age, mental incapacity, and familial relationship with the plaintiff. While the Court understands the basis for plaintiff's frustration, at bottom, the grant of parole is a discretionary exercise, and while it was necessary that he be accorded due process, there was no legal imperative that *required* that plaintiff be released when he was first eligible or at any particular point thereafter.

In addition, the defendants argue that the plaintiff's ex post facto claim now "is moot because the [USPC] applied the 1987 guidelines during reconsideration hearings." Defs.' Mem. at 28. The Court concurs. *See Johnson v. Reilly*, 734 F. Supp. 2d 26, 27 (D.D.C. 2010) (reconsideration hearing at which USPC applied 1987 Guidelines rendered injunctive and declaratory relief moot). Even if the USPC had continued to apply its 2000 Guidelines in error, the only relief the plaintiff could be awarded is a rehearing and application of the 1987 Regulations, and that has already occurred. *See Sellman*, 551 F. Supp. 2d at 84 ("Were these plaintiffs to prevail in their *ex post facto* challenge, they would gain at most a new parole hearing . . . .") (citation and internal quotation marks omitted).

Finally, the plaintiff fails to demonstrate that the application of the 2000 Guidelines had the effect of extending his time in prison beyond the time the USPC could have imposed had it applied the 1987 Regulations. Absent such a showing his ex post facto claim fails.

Based on the nature of the plaintiff's offense, his criminal history, and the vulnerability of the victim, the USPC deemed the plaintiff to be a more serious risk than his score otherwise indicated.    An upward departure in these circumstances is a valid exercise of the USPC's discretion.  *See Phillips v. Fulwood*, 616 F.3d 577, 582 (D.C. Cir. 2010) (upward departure from parole guidelines based on conclusion that prisoner represented a more serious risk than the guideline range indicated); *Cambrel v. Bledsoe*, No. 3:CV-08-1684, 2011 WL 3439199, at *11 (M.D. Pa. Aug. 5, 2011) (finding that, applying 1987 Regulations on parole rehearing, the USPC cited  valid reason for deviation from guideline range, thus setting forth "a rational and reasonable basis for denying . . . parole"); *Cobb v. Warden, FCI Gilmer*, No. 5:10CV66, 2011 WL 1137304, at *4 (N.D.W. Va. Mar. 25, 2011) (rejecting ex post facto claim arising from upward departure from 1987 Regulations on rehearing because "there [was] a reasonable probability that the petitioner would not obey the law if released and would pose a threat to the community"); *see also Blunt v. DeBoo*,  No. 10-cv-73, 2011 WL 198106, at *3 (N.D.W. Va. Jan. 19, 2011) (noting that "the *Sellmon* litigation re-affirmed application of 28 C.F.R. § 2.80(o) in those cases where the Commission departed from the guidelines on the basis that the prisoner's release would pose a 'serious risk' to the public safety").

## D.  The Plaintiff Fails to State a Due Process Claim

The plaintiff argues that the USPC "increased [his] sentencing range taking him well past his eligibility/suitability release date," Compl. ¶ 57, and thus "caus[ed] a liberty interest violation through procedural due process," *id.* ¶ 58. He claims that, under the 1987 Regulations, he "could have be[en] paroled <u>immediately</u> after service of his minimum sentence."  *Id.* ¶ 62 (emphasis in original).   The plaintiff maintains that the parole statute and the 1987 Regulations employ "mandatory language" which so restricts the USPC's discretion that the 1987 Regulations "give

rise to a protectable liberty interest in parole release."  Pls.' Resp. to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") at 16.  The law, however, recognizes no liberty interest in parole.

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  *Greenholtz v. Inmate of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 7 (1979).  The District of Columbia Code "provides no substantive limitations on the Board's authority to grant parole which would create a liberty interest."  *Price v.* Barry, 53 F.3d 369, 370 (D.C. Cir. 1995).  And under the 1987 Regulations, "parole is never '*required* after the Board determines that the necessary prerequisites exist.'" *Ellis v. District of Columbia,* 84 F.3d 1413, 1420 (D.C. Cir. 1996) (quoting *Bd. of Pardons v. Allen,* 482 U.S. 369, 376 (1987)) (emphasis in original); *McRae v. Hyman,* 667 A.2d 1356, 1361 (D.C. 1995) (concluding that the 1987 Regulations do not give rise to a liberty interest in parole).

*E. The Plaintiff Fails to State an Equal Protection Claim*

The plaintiff alleges that the defendants' failure to grant parole violated his right to equal protection.  Compl. ¶ 71.  He contends that he was "treated with discrimination." because three other sex offenders "had received presumptive dates" for their parole release but he had not. Pl.'s Opp'n at 17.  The complaint sets forth no factual allegations to support an equal protection claim -- there are no allegations from which the Court could conclude that the plaintiff "is a member of a suspect class deserving heightened scrutiny,"  that  his membership in that class played any role in the USPC's decision, or that other similarly situated persons received more favorable treatment.  *See King v. U.S. Parole Comm'n*, No. 02-5207, 2002 WL 31520756, at *1 (D.C. Cir. Nov. 13, 2002) (per curiam); *see also Hunter v. U.S. Parole Comm'n*, 308 F. App'x 856, 859-60 (5th Cir. 2009) (deeming the plaintiff's equal protection claim abandoned absent allegation or proffer that he was treated differently from similarly-situated prisoners because of

the defendants' discriminatory intent).  The complaint offers no "factual content that allows the court to draw the reasonable inference that [the defendants are] liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, __, 129 S. Ct. 1937, 1949 (2009), and, therefore, the plaintiff's equal protection claim must be dismissed.


## III.  CONCLUSION

The complaint fails to state claims upon which relief can be granted and, accordingly, the defendants' motion to dismiss will be granted.   An Order accompanies this Memorandum Opinion.



AMY BERMAN JACKSON
United States District Judge

DATE:  May 16, 2012